counsel, you may proceed. Morning, your honors. May it please the court. Andrew has been shaved on behalf of petitioner and appellant Michael Turner. I believe that there are three inquiries that the court needs to make in judging this appeal. The first is not disputed, which is whether trial counsel's performance at Mr. Turner's trial met the objective standard of reasonableness. This is an inquiry that has never been challenged by the state. The magistrate judge found that it was below the standard, and that has not been challenged in this appeal. The question then becomes prejudice of the ineffective assistance by Mr. Turner's counsel. Well, where is the prejudice? He was found with gasoline on his trousers. The dog alerted. He lied about calling 9-1-1. You've got an uphill climb, I think. I understand, your honor, and I'd like to address that at the outset. I think, first of all, pages 12 to 15 of our reply brief go through each point raised by the state in its opposition brief, and I'd also like to note that this is not a petition or an appeal based on insufficient evidence. We recognize that presented as it was, in isolation, without any alternative explanation of the cause of the fire, it can appear to be strong evidence. The problem is that the alternative explanations, after an evidentiary hearing, kind of fall apart. I mean, the alibi explanation gets essentially nowhere. He has incredible credibility problems and, in fact, inculpates Turner by putting him inside the apartment right before the fire and saying it's his gas can, and, I mean, that's not helpful at all, and the only other helpful thing, of course, is the fact that Taylor also made a threat to burn down the house. But, and he was apparently seen by somebody at the McDonald's, which I take it is near the house, but there's nothing to link him to the incident as there is with Taylor, who was inside the house, made the threat, was seen at the house before and after the fire was started, and lied about what he was doing. I'd like to get back to Judge O'Scanlan's question about the evidence related to Mr. Turner, but let me first address your honest question. Well, I thought this was precisely Judge O'Scanlan's question, because what you want us to do quite properly is look at the whole bowl of wax, and so I'm just saying if you do look at the whole bowl of wax as induced through the evidentiary hearing and you put that into the mix, you're still left with the question that Judge O'Scanlan posed, and that's what I would be interested in hearing you dispute, if you can. And I would like to, Your Honor. So if the evidence of Taylor's participation or his threat and his having set fire to his own building, if all of that had come in, you're saying that that would have affected the outcome of this case? Yes, and I'd like to go through. I think the evidence related to Mr. Taylor is quite strong, far stronger than has been indicated by some of the questions, and if I could just briefly go through what exactly the evidence induced in the habeas proceedings showed. It showed, one, that Mr. Taylor made a specific threat to burn down the apartment at issue. I realize that one was stated, within a day of the fire. This threat was based on his being owed a drug debt by the occupant of the apartment, Mary Ann Gary. Mary Ann Gary stated to him that she was not able to pay that drug debt, clearly, so that left him with would he carry out his threat or not. By the next morning, according to Jose Barea's declaration, Mr. Taylor was still angry about the drug dispute from the night before. Mr. Taylor was then seen virtually across the street and about a quarter of a block away at the McDonald's as the fire has just been started and the police, the fire department, have arrived. He's intently watching the fire. He's spotted by Ginger Ewing, whose declaration, along with Mr. Barea's, were never contradicted and they were never asked to be sent to prosecution by the state. Mr. Taylor was then, within six days, less than a week, arrested for another arsenal three blocks away, which occurred, he admitted, because of a drug dispute, took place in almost an identical manner, which, as expert Michael Lightfoot opined, would have been, in principles 1101B, evidence that an exact same two and a half gallon of red gasoline was spread, a can was spread of gasoline, all over the apartment and then a lighter was used and, in fact, not only were the fires identical, but when he was questioned, he being Mr. Taylor, he said he was drunk at the time he started the fire and he had been drunk for the prior two weeks, a period of time which, in all of this, I mean, all of that's fine and it sounds terrible. I mean, you know, but where's the link that would overcome all of the evidence with respect to Turner, including, you just reminded me, the fact that he had five matchbooks and a lighter in his pocket? He did have matchsticks in his pocket. And I agree, as Your Honor stated, that the evidence for Mr. Taylor sounds terrible. And what I was going to do is ask Your Honor to imagine a trial of Mr. Taylor in which all the evidence I just outlined had been presented to a jury with no alternative explanation for who might have committed the crime. I think in that situation, the State would be arguing that the evidence against Mr. Taylor is extremist. But you don't have a link to the house. That's the whole problem. I mean, all the links connect the house, the gas, the lighter, and the line to Turner. The threat that Mr. Taylor made was specifically to that apartment and he was seen across the street from the apartment at the time of the fire. I believe those two factors, in addition to everything else I've laid out, are a link to the apartment. And I'd also like to point out the testimony of Sonia Perez, who was a prosecution witness and can be found in the record at 1308, beginning at 1308. And at pages 1313 to 1315, she testifies that, as Your Honor has phrased, Mr. Barrea, a Hispanic man who appears to have been, based on all the evidence, Mr. Barrea, and Mr. Turner were walking away from the apartment. She had heard Mr. Turner on the phone making some angry remarks. She came out approximately five minutes later. Mr. Turner had been alone. All of a sudden, she sees Mr. Turner and another man walking away from the apartment, carrying bags. She's outside her apartment. She's not looking through a window. She's actually outside her apartment watching them. She sees no indication of any fire anywhere. She goes back into her apartment. If the prosecution's theory is to be believed, within five minutes between the time he's on the phone and the sidewalk, he has joined up with Mr. Barrea. He's gone into the apartment. He's grabbed his bags. He's somehow got gasoline all over the apartment. He's started the fire. He's come out, and then he's calmly walking. She says he's walking normally. He's not running. He's not hustling away from the fire he's just started. He's normally walking away from the fire. She then goes back into the apartment, and sometime between 10 minutes, according to her testimony, or another prosecution witness, Harry Sadler, said between 30 and 60 minutes later, there was some evidence of a fire. So sometime between 10 minutes and 60 minutes, there's evidence of a fire. We know Lloyd Taylor, only a few minutes later, is across the street watching the fire. The idea that Mr. Taylor could have been there, seen, heard Mr. Turner yelling on the phone, thought that that might be an opportune time to carry out his threat. We know the back door, there was a back door to the apartment, which was not in view of any of the other neighbors. That's the door that the occupants of the apartment fled from, could have been used by Mr. Taylor. I admit that what I'm telling you now is somewhat speculative, but the problem is it's all speculative because trial counsel completely failed to follow up on this incredibly, potentially strong lead. Well, it's not so speculative now because we have an evidentiary hearing, so we know what all these folks would have said, right? Well, we don't know what, unfortunately, we know what many of them would have said. Unfortunately, we don't know what Lloyd Taylor would have said, what would have been found on Lloyd Taylor. You know, Your Honors are pointing to the matchsticks in Mr. Turner's pocket. I don't think having matchsticks is that uncommon. It very well could have been that Mr. Taylor would have said something inculpatory, had something on his body, but there's, I want to raise one other issue which was referred to by Judge Reimer, which is that there was a declaration, sworn declaration from Jose Barea, which again, not contradicted in any way at the evidentiary hearing by the prosecution, in which he states clearly he was walking away from the apartment with Mr. Turner and there was no fire. And he was with Mr. Turner from that moment until they saw the fire. Well, Mr. Barea may have some credibility issues based on some prior convictions. He was never charged in any way related to the arson. And the fact that there is a full alibi witness who was known to trial counsel at the time and never spoke to, that alone could be enough to raise reasonable doubt. While the prosecution says he's not a very credible witness, the jury might not have believed him. They might not have, but they might have, and had they believed him, that alone, everything about Lloyd Taylor aside, Jose Barea's testimony alone was a full alibi, and if believed, would lead to reasonable doubt. And that was the conclusion that Michael Lightfoot, the expert who has incredible experience as a professor, as a prosecutor in the Department of Justice, attorney with the Civil Rights Division, and as a public defender, opined that Mr. Barea's declaration alone was sufficient to raise a reasonable probability of a different outcome at trial, as does Mr. Taylor's. But, again, Mr. Lightfoot said Barea alone. The point is that the analysis that needed to be undertaken, according to the Wiggins v. Smith Supreme Court case, according to the more recent Ninth Circuit case, Duncan v. Varnosky, which was not cited because it came out between the opening brief and the reply brief, but it's at 528 F. 3rd, 1222, from 2008, all make clear that what is required by the district court is a weighing of the evidence that was adduced at trial and the evidence that should have been adduced at trial. In other words, what was adduced at the habeas proceedings. In this case, rather than engage in such a weighing, the magistrate judge approved by the district court simply decided that the evidence against Mr. Turner was overwhelming without considering the full context of what could have and should have been presented. And I think a quote from the Lord v. Wood case, a Ninth Circuit case cited, in which Judge Kaczynski noted that trial counsel had at their fingertips information that could have undermined the prosecution's case. It chose not to develop this evidence and use it at trial. And that failure led the court to reverse the denial of a habeas petition and the court noted that the prosecution might still have won a conviction by exploiting the inconsistencies in the defense witness' accounts, but that would have been a very different case. The case here with Lloyd Taylor being presented as a potential perpetrator of the crime, that Jose Berrea being allowed to testify as to the alibi that Mr. Turner had, would have been a very different case. And again, I'm sure your honors are aware of this, but the standard is not more likely than not he would have been acquitted. Strickland states that it's not the highest standard and that's confirmed by Sanders v. Rattell, Ninth Circuit case. It's a reasonable probability of a different result. And here a different result is simply at least one juror having reasonable doubt about Mr. Turner's guilt. It is, of course, not a decision whether Mr. Turner or whether Mr. Taylor. It is a question of does all the evidence raise a reasonable doubt as to Mr. Turner's guilt. And I only have a couple of minutes. I'd like to reserve that. You may do so, counsel. That's fine. Thank you very much. We'll hear from the State. Good morning, Your Honor. Deputy Attorney General Rahm Emanuel, on behalf of the Respondent. May it please the Court. First, I have to take issue with what counsel said regarding our position. I went back and looked at the record very carefully in preparing for this argument, and we never conceded the first performance promise strictly. We might just as well, hadn't we? Anybody that's considered it has decided that the counsel's performance was deficient. Just to finish my point, there was some discussion at the evidentiary hearing and then the magistrate judge did not bring the issue up again. However, the focus of our brief was as Strickland mandates or allows that you can proceed to the prejudice prong of Strickland if it's easier to dispose of the IEC claim that way. And we feel, in this case, it's very easily disposed of. What counsel fails to put together, and we point this out in our brief, is no matter how much isolated bits of evidence he can find connecting Lloyd Taylor somehow to this crime, it doesn't negate the overwhelming evidence against his client, Mr. Turner. As this Court has detailed some of the evidence, he himself admitted that he was there at the crime scene and making threats at the occupants of the apartment. His own witness, Jose Barea, also stated that he was at the crime scene. That is the problem that I'm having with this case, is that it's not a sufficiency of the evidence case, and so there's a different standard. And all the criminal cases, I've not seen too many criminal cases when I was a trial judge, too many criminal defendants prevail. The ones in which they did is when the defense counsel could put forth evidence that suggested that there was someone else who had motivation to commit the crime and the means to commit the crime and was in the scene, and that at least raised the reasonable possibility in the juror's mind that it wasn't the defendant, it was this other person. Here you have a real other person, and that's the problem. He actually had motivation, had the wherewithal, demonstrated he did the same thing. The jury had that in front of them. Can you really say that not one of them would have had reasonable doubt? Yeah, I believe that we can say that. And I would fall back on the magistrate judge's R&R, the revised final R&R, although this is not part of the certificate of appealability. The court did discuss this third-party culpability evidence related to Lloyd Taylor. And the court said that the link between Taylor and this crime is just too tenuous. It would not have been admitted under state law as third-party culpability evidence. So even if he would have presented the evidence properly in the lower court, the defense attorney, our position is that it would not have been admissible in any event. Which evidence wouldn't have been admissible? The evidence concerning Lloyd Taylor. All of it? I mean, certainly the prosecutor's main witness testified to the threat. Correct. I mean, she could have testified to the threat, later did. And that's when the trial court in the state held the hearing regarding whether this evidence should be admissible. The prosecution's witness, Ms. Casey, brought this evidence to the prosecutor's attention on the morning she was to testify. The trial court considered it. Since then, there's been this other evidence presented by the petitioner, including these declarations. But at that point, it was this link that or it was Mr. Taylor had made a threat at some unspecified time before the fire occurred. Now, you said that the trial court considered it, but did what? They excluded it. And that's in the magistrate's R&R, the first part of his R&R. And that's not part of the. Okay, but it's excluded on what theory? It was not a proper third party culpability evidence under state law. Because there was nothing else. There was nothing else. The reason there was nothing else was because the attorney was incompetent and didn't go and investigate and find out what else there was that would have made, well, possibly made that testimony admissible. So it all goes back to the deficiency of the counsel. That's petitioner's allegation. Well, I mean, that's, I mean, obviously, that kind of evidence has to have a foundation. There wasn't a sufficient foundation, but there wasn't a sufficient foundation because the counsel hadn't investigated. Otherwise, there might be sufficient foundation. And you have to agree, I mean. Well, and as this court, and if I could just make a point to that, as this court knows, this was brought up during the middle of the trial. And when you're evaluating counsel's performance, you don't look back at it in hindsight. This was brought in on the day that this woman was testifying. The defense counsel is alerted to this threat. And as people who have done trials know that you don't always drop whatever you're doing in the middle of the trial to go investigate something. I think we have to get, I think, you know, that that horse has left the barn. It's deficient. And we do focus on the prejudice aspect in our briefs. But the other part of this that has me troubled is that it's not, his investigation was deficient. There was also the fact that he didn't, he failed to cross-exam and pursue anything. His whole focus seemed to be on trying to make sure that the conviction wasn't for a hate crime. And so he didn't meaningfully test other aspects. In fact, he almost conceded guilt in the closing argument. Again, you know, I would have to respectfully disagree because I would go back and look at the results of what happened at the trial. The defendant was acquitted, or not acquitted, but there was a deadlock on two of the terrorist threat counts. And also a hate crime allegation on one of the other terrorist threat counts. I think that's the aim of the defense. So there was success by defense. As much as Petitioner fails to, or will not acknowledge, there was success in his case. I mean, his sentence could have been a lot stiffer if those counts had been found true by the jury. So there was, I would respectfully disagree, there was some, or meaningful adversarial testing of the prosecution's case. That's why you had that result. He did cross-examine witnesses. He did give a closing argument. He was present at all stages of the proceedings. I mean, whether he did the best job in the world, I'm not going to speculate as to that. But I do, I don't think there can be any argument with the results. And the results was two, a deadlock on two of the counts which were dismissed, and a dismissal of the hate crime allegation because also of a deadlocked jury on that, on that finding. Okay. Anything further, counsel? Yeah. I would just like to go back to listing some of the evidence that was outlined by the court. I think one very, or another important thing besides Petitioner's own statements and other witnesses on his side that put him at the scene, two independent eyewitnesses who presumably had no motive one way or the other put Petitioner at the scene right before the fire started. As to Ms. Perez's testimony, she said at the most it was ten minutes. And there was never anything challenged on whether, on how long it took this fire to start in the trial court or at the evidentiary hearing. And one thing as to Borrea's testimony, the magistrate judge found his testimony not to be credible, especially in the area of the accelerant detection on the, alerting to Petitioner's clothing because of supposedly exhaust fumes. I mean, that was just pure speculation on a Petitioner's part. So it shouldn't even be considered by this court. I would just conclude that the claim, when it's looked at through the deferential lens of the AEDPA, there's no way it can succeed, that no amount of advocacy in this case would have erased the fact that Petitioner was at the scene of the crime and that he had the instruments to start the fire and that the accelerant detection dog alerted to him shortly after the fire was started. You're just confusing about the standard. We apply the Strickland standard, right? Yes. That's not, that isn't on top of AEDPA deference. Well, I think... What are you saying? We apply the Strickland standard, right? We apply the Strickland standard, but I think that the U.S. Supreme Court, as we cite in our brief, says when you look at the Strickland claim through AEDPA, it's doubly deferential, so I think that's a little more deference. So what would the standard, can you articulate what standard you're arguing for? I would say a doubly deferential standard. What does that mean? That means that it's a higher deference than what you would ordinarily give to claims under AEDPA. I think that's what the U.S. Supreme Court is talking to. I don't know if I can just point the court to that case. So are you saying that the standard is whether the State court was objectively unreasonable in not finding that there was a reasonable probability that the deficiency of counsel affected the outcome of the case? Is that the standard? Yeah, that is the AEDPA standard. And Yarborough v. Gentry, which is a U.S. Supreme Court case, says that judicial review of a Strickland claim is highly deferential. And they describe it, these are their words, doubly deferential when it's conducted through the lens of federal habeas. So that's the U.S. Supreme Court, Yarborough v. Gentry. Right, but that doesn't help articulate the standard. Well, we feel that that makes the standard much higher than what it would ordinarily be under, as you just articulated under AEDPA. Well, I don't know if what I articulate is correct. That's what I'm saying. Under AEDPA, it would be the unreasonable application of Supreme Court precedent as to a particular case. The reasonable application of Strickland by the California courts in this case. Is that what we're talking about? Yes. Anything further? No, that's it. Thank you. The case just argued. Oh, no, I'm sorry. We have some rebuttal time reserved by Mr. Ebershaw. Thank you, Your Honor. I'll be brief. Quickly, the admissibility issue. Just to be clear, the magistrate judge specifically found that the evidence would have been admissible had trial counsel discovered it. That was at Executive Record 23 in footnote 9. That was not challenged in the briefs. The issue of, I think this is a little far afield, but trial counsel not doing anything more because he only found out about this third-party evidence sort of the day of trial, I think counsel stated. Actually, trial counsel specifically stated he had been asked by Mr. Turner several times to follow up on this third-party evidence, but he hadn't done anything. So I don't think it's accurate to say he only found out about it at trial. On the deferential standard, very briefly, I think that the doubly deferential standard referred to by counsel could not be applied in a case where the state court did not make factual findings or made them without permitting Mr. Turner to fully develop the record. That's specifically found by the magistrate judge at, again, page 23 of the Executive Record, note 9, and again in an order by the magistrate judge at 790, where he specifically stated no state court held an evidentiary hearing. So, quote, it cannot be said that any state court has reliably found the relevant facts. In that case, without the reliable facts being found and Mr. Turner having a chance to challenge them, I think it's a straightforward application of Strickland and whether the state court reasonably applied the facts that came out of the habeas hearing to the Strickland standard. Two last points. With regard to the evidence against Mr. Turner, I would again point out that, while there were two witnesses that placed Mr. Turner at the scene of the apartment before the fire, as counsel noted, neither of those witnesses had any testimony related to Mr. Turner taking any action with gasoline, any action to start a fire, doing anything at all related to the fire. They simply heard him on the phone prior to the fire. He left before anyone saw a fire, and a fairly short time, depending on which witness you believe, sometime later there was a fire. So I just want to be clear about that. And even the prosecutor trial admitted that it was a circumstantial case. As the arson, nobody saw anything. All right. Thank you, counsel. Your time has expired. Okay. I just wanted to, I will submit on that. Thank you very much. Very well. Thank you very much. The case just argued will be submitted for decision, and the Court will adjourn.
judges: O'scannlain, Rymer, Wardlaw